**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**EVANSVILLE DIVISION**

| | | |
|---|---|---|
| **PAYTON WHOBERRY,**<br>**Plaintiff,** | ) | |
| **v.** | ) | **CAUSE NO:** |
| **COUNTRYMARK REFINING AND LOGISTICS, LLC,**<br>**Defendant.** | ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### I. NATURE OF THE CASE

1. This is an action brought by Plaintiff, Payton Whoberry ("Whoberry" or "Plaintiff"), by counsel, against Defendant, CountryMark Refining and Logistics, LLC, ("CountryMark" or "Defendant"), for its actions against him in violation of the Federal Railway Safety Act - 49 U.S.C. §20109 *et. seq.* ("FRSA").

### II. PARTIES

2. Whoberry is a citizen of the United States, the State of Indiana and, at all times relevant to this litigation, resided in Vanderburgh County, Indiana, which is within the geographical boundaries of the Southern District of Indiana.

3. Defendant is a Domestic Limited Liability Corporation, which maintains offices and conducts operations within the Southern District of Indiana.

### III. JURISDICTION AND VENUE

4. Jurisdiction is conferred on this Court over the subject matter of this litigation pursuant to 28 U.S.C. § 1331 and 49 U.S.C. §20109 *et. seq.*

5. Defendant is a "railroad carrier" or "contractor or subcontractor" engaged in interstate commerce as that term is defined by 49 U.S.C. §20109(a) and was the employer of Whoberry during the relevant timeframe.

6. At all times relevant to this action, Whoberry was an "employee" as that term is defined by 49 U.S.C. §20109(b) and was employed but the Defendant.

7. Whoberry filed his administrative complaint with the United States Department of Labor ("DOL") – Occupational Health and Safety Administration ("OHSA") within 180 days of his retaliatory discharge from employment with the Defendant.

8. Whoberry filed his administrative complaint with the DOL on March 3, 2025. Over 210 days have passed since the filing of Whoberry's administrative complaint with the DOL. As such, Whoberry has exercised his "kick-out" rights to pursue his claim in Federal Court.

9. A substantial portion of the events, transactions, and occurrences concerning this case have arisen in the geographical environs of the Southern District of Indiana, thus venue is proper in this Court.

## IV. Factual Allegations

10. Whoberry was hired by the Defendant in or about May 2015. Whoberry held the position of Regulatory Compliance Training Specialist upon his termination on September 11, 2024.

11. At all times relevant, Whoberry met or exceeded Defendant's legitimate performance expectations.

12. The Defendant's facility for which Whoberry was employed is a petroleum refiner who manufactures hazardous materials, ships and receives hazardous materials by freight

rail. The Defendant's rail is connected to the general railroad system and, as such, the Defendant's facility at issue is regulated by the Federal Railway Agency ("FRA") and its concomitant laws and regulations.

13. During the last 4 years of his employment tenure with the Defendant, Whoberry raised safety concerns to Defendant's Management – verbally and in writing – about expired "hazmat" training for its employees who continued to load and unload railcars containing hazardous materials. Specifically, Whoberry notified the Defendant that it was out of compliance with the laws and regulations and in danger of a hazardous materials incident/accident.

14. In late 2023, Whoberry's supervisor, David Hertzing, was abruptly terminated by the Defendant. Whoberry applied for the open supervisor position and performed many of the position's duty while the position was open.

15. In July 2024, it was brought to the Defendant's attention that at least 4 employees' hazmat training had expired and at least 1 of the employee's job responsibilities was - Rail Loader - who was performing their job duties out of compliance with the FRA's rules and regulations.

16. Whoberry brought these compliance concerns to the Defendant's Director of Environmental and Regulatory Compliance – Tom Shaw.

17. In August 2024, Director Shaw required Whoberry to send him daily activity logs – in 15-minute incremental specificity - of his work. To Whoberry's knowledge, no other employee had such a requirement.

18. Whoberry questioned Director Shaw that why – after years of Whoberry's employment and Director Shaw being in his position for over 2 years – he was now required to provide a daily activity log. Whoberry did not receive a response.

19. On or about August 23, 2024, Whoberry received an email from the Defendant's Refinery Training Supervisor – David Austin – with a list of employees who required hazmat training and upcoming training sessions. Mr. Austin's email asked for specific dates. Whoberry responded that it needed to be done as soon as possible and it could be done on August 28 or 29, 2024. However, Whoberry was told – no – to those dates.

20. On August 29, 2024, Whoberry emailed the FRA Inspector asking for assistance in determining noncompliance penalty amounts for expired hazmat training for an employee whose hazmat training had been expired for over a year. Whoberry informed the FRA Inspector that he wanted to ensure he had the correct information to provide to Defendant's Management.

21. Later in the day on August 29, 2024, after his initial emails with the FRA Inspector, Whoberry emailed Director Shaw, Supervisor Blair Currie, and Defendant's President Matt Smorch. In his email, Whoberry outlined that 1 employee's hazmat training had been expired for 557 days, how another employee continued to load hazardous materials into railcars despite his hazmat training being expired, and Whoberry's reports regarding the same. Moreover, Whoberry outlined how he and his concerns were being disregarded, he would be blamed or retaliated against when the violations are discovered during an eventual FRA audit, that the Defendant was at risk for a hazmat incident, the Defendant was in violation of FRA regulations, and that it was appropriate for Whoberry to report all of these issues to the FRA.

22. After sending the aforementioned email to Defendant's Management, Whoberry continued emailing back and forth with the FRA Inspector that same day.

23. Thereafter, Whoberry continued to email Director Shaw to set up the hazmat training and questioning if employees with expired hazmat training were still loading railcars. Director Shaw never responded other than to ask Whoberry for his daily work activity logs.

24. On September 10, 2024, Directory Shaw finally emailed Whoberry informing him that the hazmat training program had been paused. Whoberry responded - via email including Defendant's Human Resources Director, Jennifer Zimmer – questioning why he had been left out of any decisions to pause the hazmat training.

25. Furthermore, in the same email from September 10, 2024, Whoberry reiterated that he had made it known that the Defendant was not in compliance with federal law and that he believed he was being retaliated against for bringing up the compliance issue. In response, Whoberry received an electronic meeting invitation for the next morning.

26. During the meeting on September 11, 2024, with Director Shaw, HR Director Zimmer, and Defendant's Vice President, Ada Cuardo, Whoberry was terminated from his employment due to his alleged "aggressive emails."

27. Defendant's proffered reason for Whoberry's termination is simply pretext for retaliation in violation of the FRSA.

## V. Legal Allegations

### Count I – FRSA Retaliation

28. Whoberry hereby incorporates paragraphs one (1) through twenty-seven (27) of his Complaint.

29. Whoberry engaged in protected activity by raising, reporting, and refusing to remain silent about safety concerns and compliance with federal rules and regulations. The Defendant was aware Whoberry engaged in such activity.

30. As a result of engaging in protected activity, the Defendant retaliated against Whoberry by terminating his employment.

31. Defendant's actions were intentional, willful and in reckless disregard of Whoberry's rights as protected by the FRSA.

32. Whoberry suffered damages as a result of Defendant's unlawful actions.

**REQUESTED RELIEF**

WHEREFORE, Plaintiff, Payton Whoberry, by counsel, respectfully requests that this Court find for Plaintiff and order Defendant to:

1. Reinstate Plaintiff to his full-time position, with the pay and benefits he would have enjoyed but for Defendant's unlawful employment actions, or award him front pay in lieu thereof;

2. Pay to Plaintiff all of his lost wages and benefits;

3. Payment of uncovered medical bills and/or insurance premiums;

4. Pay to Plaintiff compensatory damages including but not limited to emotional distress, mental distress, and physical distress;

5. Pay to Plaintiff punitive damages in an amount not to exceed $250,000;

6. Pay to Plaintiff pre- and post-judgment interest;

7. Pay Plaintiff's costs and attorney fees incurred in litigating this action – including expert witness fess; and,

8. Provide any further equitable relief this Court sees fit to grant.

Respectfully submitted,

*/s/Kyle F. Biesecker*________________________

Kyle F. Biesecker (IN Bar #: 24095-49)
BIESECKER DUTKANYCH & MACER, LLC
411 Main Street
Evansville, Indiana 47708
Telephone: (812) 424-1000
Facsimile: (812) 424-1005
Email: kfb@bdlegal.com

*Attorneys for Plaintiff, Payton Whoberry*

**DEMAND FOR JURY TRIAL**

Plaintiff, Payton Whoberry, by counsel, respectfully requests a jury trial for all issues deemed triable by jury.

Respectfully submitted,

*/s/Kyle F. Biesecker*
Kyle F. Biesecker (IN Bar #: 24095-49)
BIESECKER DUTKANYCH & MACER, LLC
411 Main Street
Evansville, Indiana 47708
Telephone: (812) 424-1000
Facsimile: (812) 424-1005
Email: kfb@bdlegal.com

*Attorneys for Plaintiff, Payton Whoberry*